**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE: MOVEIT CUSTOMER DATA SECURITY BREACH LITIGATION | MDL No. 1:23-md-03083-ADB-PGL |
| This Document Relates To:<br><br>23-cv-13231-ADB<br>23-cv-12922-ADB | [Leave to Filed Granted August 3, 2026, at ECF No. 2023] |

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED GRIPA CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS


INTRODUCTION ..... 1

BACKGROUND ..... 2

I. History of the Litigation. ..... 2

A. Procedural Posture. ..... 3

B. Negotiations of the Proposed Settlement. ..... 5

II. The Settlement Provides Significant Benefits to the Settlement Class ..... 6

A. The Proposed Settlement Benefits Plan. ..... 7

B. Dismissal and Release of Claims. ..... 8

III. Results of Settlement Administration and Notice Plan. ..... 8

ARGUMENT ..... 11

I. The Proposed Settlement is Fair, Reasonable, and Adequate and Should be Finally Approved. ..... 11

A. The Complexity, Expense, and Likely Duration of the Litigation. ..... 12

B. The Reaction of the Settlement Class to the Settlement. ..... 14

C. The Stage of the Proceedings and Amount of Discovery. ..... 15

D. The Risks of Establishing Liability and Damages. ..... 17

E. The Risks of Maintaining the Class Action Through Trial. ..... 19

F. The Ability of the Defendant to Withstand a Greater Judgment. ..... 20

G. The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and the Attendant Risks of Litigation. ..... 20

II. The Court Should Finally Certify the Settlement Class. ..... 22

A. The Settlement Class Meets the Requirements of Rule 23(a). ..... 23

B. The Settlement Class Meets the Requirements of Rule 23(b). ..... 27

III. The Notice Program Satisfied Rule 23 and Due Process by Providing Settlement Class Members with Adequate Notice of the Settlement. ..... 30

CONCLUSION ..... 32

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Abubaker v. Dominion Dental USA, Inc.*,
No. 119CV01050LMBMSN, 2021 WL 6750844 (E.D. Va. Nov. 19, 2021)............................ 25

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ........................................................................................................ 22, 27

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) .............................................................................................................. 27

*Attias v. CareFirst, Inc.*,
346 F.R.D. 1 (D.D.C. 2024)................................................................................................. 22

*Bezdek v. Vibram USA Inc.*,
79 F. Supp. 3d 324 (D. Mass. 2015) .............................................................. 11, 13, 25

*Bussie v. Allmerica Fin. Corp.*,
50 F. Supp. 2d 59 (D. Mass. 1999) ....................................................................... 12, 14

*Carter v. Vivendi Ticketing US LLC*,
No. SACV2201981CJCDFMX, 2023 WL 8153712 (C.D. Cal. Oct. 30, 2023)........... 13, 15, 18

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)........................................................................ 12, 17, 20, 21

*Corra v. ACTS Ret. Servs., Inc.*,
No. CV 22-2917, 2024 WL 22075 (E.D. Pa. Jan. 2, 2024) ..................................................... 28

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001)..................................................................................................... 20

*Diaz v. FCI Lender Servs., Inc.*,
No. 17-CV-8686 (AJN), 2020 WL 4570460 (S.D.N.Y. Aug. 7, 2020)..................................... 16

*Engel v. Scully & Scully, Inc.*,
279 F.R.D. 117 (S.D.N.Y. 2011) ............................................................................................ 23

*Fid. & Guar. Ins. Co. v. Star Equip. Corp.*,
541 F.3d 1 (1st Cir. 2008) ..................................................................................................... 11

*Fulton-Green v. Accolade, Inc.*,
No. 18-274, 2019 WL 4677954 (E.D. Pa. Sept. 24, 2019)....................................................... 13

*Gravley v. Fresenius Vascular Care, Inc.*,
No. CV 24-1148, 2025 WL 2099219 (E.D. Pa. July 24, 2025) ........ 21

*Green-Cooper v. Brinker Int'l, Inc.*,
73 F.4th 883 (11th Cir. 2023) ........ 28

*Hall v. ProSource Techs., LLC*,
No. 14-CV-2502 (SIL), 2016 WL 1555128 (E.D.N.Y. Apr. 11, 2016) ........ 21

*Hashemi v. Bosley, Inc.*,
No. CV 21-946 PSG (RAOX), 2022 WL 18278431 (C.D. Cal. Nov. 21, 2022) ........ 15

*Hill v. State Street Corp.*,
No. 09-cv-12146, 2015 WL 127728 (D. Mass. Jan. 8, 2015) ........ 31

*Hochstadt v. Bos. Sci. Corp.*,
708 F. Supp. 2d 95 (D. Mass. 2010) ........ 16

*Holden v. Guardian Analytics, Inc.*,
No. 2:23-CV-2115, 2024 WL 2845392 (D.N.J. June 5, 2024) ........ 13, 14, 17

*In re Anthem, Inc. Data Breach Litig.*,
327 F.R.D. 299 (N.D. Cal. 2018) ........ 15, 26, 29

*In re Cabletron Sys., Inc. Sec. Litig.*,
239 F.R.D. 30 (D.N.H. 2006) ........ 15

*In re Cap. One Consumer Data Sec. Breach Litig.*,
No. 119MD2915AJTJFA, 2022 WL 18107626 (E.D. Va. Sept. 13, 2022) ........ 21, 30

*In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*,
325 F.R.D. 529 (D. Mass. 2017) ........ 27

*In re Colgate-Palmolive Softsoap Antibacterial Hand Soap Mktg. & Sales Pracs. Litig.*,
No. 12-MD-2320-PB, 2015 WL 7282543 (D.N.H. Nov. 16, 2015) ........ 22

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
No. 1:17-MD-2800-TWT, 2020 WL 256132 (N.D. Ga. Mar. 17, 2020) ........ 18

*In re Forefront Data Breach Litig.*,
No. 21-CV-887, 2023 WL 6215366 (E.D. Wis. Mar. 22, 2023) ........ 15

*In re GSE Bonds Antitrust Litig.*,
414 F. Supp. 3d 686 (S.D.N.Y. 2019) ........ 19

*In re Loancare Data Security Breach Litig.*,
No. 3:23-CV-01508-CRK-MCR, 2025 WL 2604518 (M.D. Fla. Sept. 9, 2025) ...................... 21

*In re Lupron Mktg. & Sales Pracs. Litig.*,
228 F.R.D. 75 (D. Mass. 2005)........................................................................................ 11

*In re M3 Power Razor System Marketing & Sales Practices Litig.*,
270 F.R.D. 45 (D. Mass. 2010)..................................................................................25, 26

*In re Marriott Int'l Customer Data Sec. Breach Litig.*,
345 F.R.D. 137 (D. Md. 2023)......................................................................................... 19

*In re Marriott Int'l, Inc. Customer Data Sec. Breach Litig.*,
341 F.R.D. 128 (D. Md. 2022)...................................................................................19, 22

*In re Marriott Int'l, Inc.*,
78 F.4th 677 (4th Cir. 2023)............................................................................................ 19

*In re Namenda Direct Purchaser Antitrust Litig.*,
462 F. Supp. 3d 307 (S.D.N.Y. 2020) .............................................................................. 17

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
522 F.3d 6 (1st Cir. 2008) ............................................................................................... 23

*In re Puerto Rican Cabotage Antitrust Litig.*,
815 F. Supp. 2d 448 (D.P.R. 2011) ................................................................................. 11

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*,
No. CV 14-MD-02503, 2017 WL 4621777 (D. Mass. Oct. 16, 2017).............................. 27, 29

*In re Sonic Corp. Customer Data Breach Litig.*,
No. 1:17-MD-02807-JSG, 2020 WL 6701992 (N.D. Ohio Nov. 13, 2020)............................. 22

*In re Sonic Corp. Customer Data Sec. Breach Litig.*,
No. 1:17-MD-2807, 2019 WL 3773737 (N.D. Ohio Aug. 12, 2019) ................................ 17, 18

*In re Sturm, Ruger, & Co., Inc. Sec. Litig.*,
No. 3:09CV1293 VLB, 2012 WL 3589610 (D. Conn. Aug. 20, 2012).................................... 20

*In re Target Corp. Customer Data Sec. Breach Litig.*,
309 F.R.D. 482 (D. Minn. 2015)...................................................................................... 22

*In re Target Corp. Customer Data Sec. Breach Litig.*,
No. 14-md- 2522 (PAM) (JJK), 2015 WL 7253765 (D. Minn. Nov. 17, 2015)....................... 13

*In re TJX Cos. Retail Sec. Breach Litig.*,
246 F.R.D. 389 (D. Mass. 2007)........................................................................................18

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
535 F. Supp. 2d 249 (D.N.H. 2007)..................................................................11, 14, 18

*In re Wawa, Inc. Data Sec. Litig.*,
No. CV 19-6019, 2024 WL 1557366 (E.D. Pa. Apr. 9, 2024)..............................................15

*In re Yahoo! Inc. Customer Data Security Breach Litig.*,
No. 16-MD-02752, 2020 WL 4212811 (N.D. Cal. July 22, 2020)........................................13

*Jermyn v. Best Buy Stores, L.P.*,
No. 08 CIV. 214 CM, 2012 WL 2505644 (S.D.N.Y. June 27, 2012) ....................................20

*Meaden v. HarborOne Bank*,
No. 23-CV-10467-AK, 2023 WL 3529762 (D. Mass. May 18, 2023) ...................... 11, 23, 31

*Morris v. Affinity Health Plan, Inc.*,
859 F. Supp. 2d 611 (S.D.N.Y. 2012) ....................................................................................20

*Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund*,
582 F.3d 30 (1st Cir. 2009) ....................................................................................................12

*Roberts v. Source for Pub. Data*,
No. 08-CV-04167-NKL, 2009 WL 3837502 (W.D. Mo. Nov. 17, 2009)...............................29

*Roberts v. TJX Companies, Inc.*,
No. 13-CV-13142-ADB, 2016 WL 8677312 (D. Mass. Sept. 30, 2016)........................... passim

*Savidge v. Pharm-Save, Inc.*,
No. 3:27-cv-186, 2024 WL 1366832 (W.D. Ky. Mar. 29, 2024).....................................22, 28

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016) ................................................................................................................27

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)..........................................................................................................24, 28

*Wright v. S. New Hampshire Univ.*,
565 F. Supp. 3d 193 (D.N.H. 2021)........................................................................................31

**Rules**

Fed. R. Civ. P. 23........................................................................................................... passim

**INTRODUCTION**

Kimberly Clarke ("Plaintiff" or "Settlement Class Representative") individually and on behalf of all others similarly situated, and pursuant to Rule 23(e), respectfully moves this Court for final approval of the proposed Class Action Settlement Agreement ("Settlement" or "SAR") with Defendant Greater Rochester Independent Practice Association ("GRIPA" or "Defendant").[1] Final Approval should be granted because the Settlement provides substantial relief for the Settlement Class, including the payment of $2.15 million by Defendant into a non-reversionary Settlement Fund to (1) be allocated to the Settlement Class according to the proposed Settlement Benefits Plan;[2] (2) pay for attorneys' fees and expenses and a Service Award to the Settlement Class Representative, as approved by the Court; and (3) cover the costs of settlement administration and the issuance of notice. According to the proposed Settlement Benefits Plan, the Net Settlement Fund (after deducting Court-approved attorneys' fees and expenses, any Court-approved Service Awards, and notice and administration costs) will be used to pay for Settlement Class Members' claims for two (2) years of credit monitoring and identity theft protection, and either (1) reimbursement of ordinary losses up to $2,500.00 (including lost time of up to four (4) hours at $25.00 per hour) and reimbursement of extraordinary losses up to $10,000.00; or (2) an alternative cash payment of $100.00.

On March 25, 2026, the Court granted preliminary approval of the Settlement. ECF No. 1734. Pursuant to the Court's Preliminary Approval Order, Notice was effectuated to the Settlement Class notifying them of the proposed Settlement. *See* Declaration of Melissa E. Baldwin ("RG/2 Decl.") RG/2 Decl. ¶¶ 6, 8–17, filed concurrently herewith. The Notice results

---

[1] Unless otherwise defined herein, all capitalized terms have the same definitions as those set forth in the proposed Class Action Settlement Agreement and Release, ECF No. 1731-1.
[2] The proposed Settlement Benefits Plan is found at ECF No. 1731-2.

have been overwhelmingly positive. To date, 274,181 of the 281,755 unique, identified Settlement Class Members have received direct notice of the Settlement, a notice rate of approximately 93%. *Id.* ¶¶ 13, 21. No Settlement Class Members have objected to the Settlement and only two (2) Settlement Class Member requested exclusion. *Id.* ¶¶ 18–19. As detailed below, the Settlement is an excellent result for the Settlement Class; the Court should find that the Settlement is fair reasonable, and adequate; and the Court should grant final approval of the Settlement.

## BACKGROUND

### I. History of the Litigation.

Plaintiff's claims against GRIPA arise out of a security incident stemming from a vulnerability in MOVEit Transfer. *See*, *e.g.*, Compl., ¶¶ 6, 10, 35–36; ECF No. 908.[3] MOVEit Transfer is a subscription-based managed file transfer application developed and licensed by Progress Software Corporation ("Progress") and used by numerous commercial and government entities, including GRIPA, to store and transfer large data files. *See* Compl., ¶¶ 3, 35–36; ECF No. 908, ¶¶ 11–12. Between May 27, 2023 and May 31, 2023, CL0P Ransomware Gang, exploited a vulnerability in the MOVEit Transfer application. *See* ECF No. 908, ¶¶ 90–155. CL0P used the MOVEit vulnerability to escalate user privileges, gain unauthorized access to customers' MOVEit Transfer environments, and access, copy, and exfiltrate the sensitive information stored therein (the "MOVEit Data Breach"). *See* ECF No. 908, ¶¶ 96–153. Shortly after exploiting the MOVEit Transfer vulnerability, CL0P threatened to name and publish the leaked data of any organizations that did not respond to its ransom demands. *See* ECF No. 908, ¶¶ 175–179, 207–208.

On or about May 31, 2023, Progress informed GRIPA of a recently discovered vulnerability in MOVEit Transfer. Compl., ¶¶ 6, 10. Specifically, Progress warned of an unauthenticated SQL

[3] Citations to "Compl." are citations to Plaintiff's Consolidated Amended Class Action Complaint (ECF No. 1712).

vulnerability that could allow unauthorized actors to escalate user privileges and access GRIPA's MOVEit Transfer environment. Compl., ¶ 10; ECF No. 908, ¶ 148–49. Following Progress's notification, GRIPA conducted an investigation and concluded that the personally identifying information ("PII") and protected health information ("PHI") of approximately 280,000 people had been taken from GRIPA's MOVEit Transfer environment due to an exploit of the MOVEit vulnerability. Compl., ¶ 6.

Although the MOVEit Data Breach involved an exploit of the MOVEit Transfer application, Plaintiff alleges that GRIPA's negligence contributed to the breach and theft of Plaintiff's and Settlement Class Members' PII/PHI. *See* Compl., ¶¶ 69–70; ECF No. 908, ¶¶ 427–57. GRIPA denies these allegations and any fault or liability in this matter. Among other defenses, Defendant argues that they cannot be negligent in using a trusted software product used by thousands of businesses and government entities worldwide. Plaintiff further alleges that Progress should have warned users, including GRIPA, that MOVEit Transfer was "not set it and forget it" with respect to security, and that additional steps should have been taken to secure the data transferred with MOVEit Transfer. ECF No. 908, ¶¶ 458–466. Plaintiff alleges GRIPA could have prevented or mitigated the MOVEit Data Breach by implementing reasonable data security measures when exchanging PII/PHI via MOVEit Transfer. *See* Compl., ¶¶ 85–95; ECF No. 908, ¶¶ 427–31. GRIPA denies these allegations. Consequently, Plaintiff sued Defendant and Progress for the alleged harm caused by the theft of their PII/PHI.

**A. Procedural Posture.**

After the appointment of Co-Lead Counsel, Liaison & Coordinating Counsel, and the Committee Chairs, the Court entered MDL Order No. 13 on April 25, 2024, which set deadlines for the parties to brief certain threshold issues in this MDL relating to Article III standing,

arbitration, and jurisdiction under the Class Action Fairness Act. MDL Order No. 13 (ECF No. 874). On June 3, 2024, GRIPA and other defendants filed a joint motion to dismiss Plaintiff's complaint pursuant to the home-state exception of the Class Action Fairness Act ("CAFA"). ECF No. 926. On July 3, 2024, Plaintiff filed her opposition to GRIPA's CAFA motion. ECF No. 1034. GRIPA later filed a joint reply in support of its CAFA motion on July 26, 2024. Following argument by the parties, on December 12, 2024, the Court issued an order denying GRIPA's CAFA motion. MDL Order No. 20.

In addition to GRIPA's CAFA motion, on July 23, 2024, all defendants in the MDL filed an omnibus motion to dismiss pursuant to Rule 12(b)(1), asserting that the underlying actions should be dismissed for lack of Article III standing. *See* ECF No. 1114. After briefing and argument by the parties, on December 12, 2024, the Court issued an opinion denying the defendants' omnibus motion to dismiss in large part finding that "(most) Plaintiffs have standing to pursue their claims." MDL Order No. 19 (as amended by MDL Order No. 32 and ECF No. 1798).

During the pendency of the omnibus motion to dismiss briefing, Plaintiffs' Co-Lead Counsel and Defendants' Liaison Counsel negotiated a proposed structure for litigating claims asserted in the MDL, with the Court ordering Plaintiffs to file a consolidated bellwether complaint against Progress and certain other defendants. Plaintiffs later filed a Bellwether Complaint against Progress and other representative defendants. *See* ECF No. 1543. GRIPA was not named as a bellwether defendant.

The Bellwether Defendants filed Rule 12(b)(6) challenges to the Bellwether Complaint on February 4, 2025. ECF Nos. 1359, 1367, 1370–71, & 1377. Bellwether Plaintiffs filed their oppositions on April 7, 2025 and the motions were fully briefed as of April 28, 2025. ECF Nos.

1437–38, 1440–42, 1465, 1467–70. Following argument by the parties, on July 31, 2025, the Court entered MDL Order Nos. 22 and 23 resolving the Bellwether Defendants' Rule 12(b)(6) motions and holding, in part, that Bellwether Plaintiffs stated claims for common law negligence under the laws of California, Florida, Illinois, Indiana, Michigan, Minnesota, Nebraska, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, Texas, Virginia, Washington, and Wisconsin, as to all Bellwether Defendants (as well as other state-law claims). MDL Order Nos. 22 & 23.

**B. Negotiations of the Proposed Settlement.**

Following the Court's rulings on CAFA jurisdiction and Article III standing, Co-Lead Counsel, the Settlement Committee, and GRIPA's counsel began discussing the possible resolution of the Litigation, which culminated the Parties then engaging in a full-day mediation session conducted on June 10, 2025 by the Honorable Morton Denlow (Ret.), a retired federal magistrate judge now with JAMS. ECF No. 1980-2 ¶¶ 13–16.[4] Before the mediation, the Parties engaged in informal discovery, wherein GRIPA and Co-Lead Counsel exchanged confidential information related to the MOVEit Data Breach and other issues in the Litigation. *Id.*, ¶ 15. As a result of the Parties' informal exchange of information, along with the Co-Lead Counsel's detailed fact investigation in conjunction with the filing of the Omnibus Set of Pleading Facts, the filing of the Bellwether Complaint, and the briefing and argument of the Bellwether Rule 12(b)(6) motions, the Settlement Committee was well-informed regarding the facts of the case, and the strengths and weaknesses of Plaintiff's claims and GRIPA's defenses leading into the mediation. *Id.*

During the mediation, the Parties reached an agreement in principle regarding the material terms of a classwide settlement, which if finally approved by the Court, will resolve all claims

[4] During the pendency of the Parties' settlement discussions, on July 31, 2025, the Court entered MDL Order Nos. 22 and 23, denying in part and granting in part the Bellwether Defendants' Rule 12(b)(6) motions.

against GRIPA in the Litigation. *Id.*, ¶ 16. Thereafter, the Parties engaged in a series of further arm's-length negotiations resulting in the culmination of the Settlement Agreement. *Id.*, ¶ 17. The finalized Settlement Agreement was fully executed as of March 2, 2026. *Id.* To effectuate the Settlement Agreement, Plaintiff later filed a Consolidated Amended Complaint on March 5, 2026. ECF No. 1712.

Plaintiff thereafter moved for preliminary approval of the Settlement, which this Court granted on March 25, 2026. ECF No. 1734. In the Court's Preliminary Approval Order, the Court preliminarily certified the following Settlement Class for purposes of settlement:

> GRIPA patients, individual healthcare providers, and physicians in the United States whose personally identifiable information and/or protected healthcare information was impacted by the MOVEit Data Breach.
>
> Excluded from the Settlement Class are (i) GRIPA, any entity in which GRIPA has a controlling interest, and GRIPA's officers, directors, legal representatives, successors, subsidiaries, and assigns; (ii) any judge, justice, or judicial officer presiding over the Litigation and the members of their immediate families and judicial staff; and (iii) any individual who timely and validly opts out of the Settlement.

*Id.* Following entry of the Court's Preliminary Approval Order, the Parties worked with the Court-appointed Settlement Administrator to effectuate notice to the Settlement Class. ECF No. 1980-2, ¶ 18.

## II. The Settlement Provides Significant Benefits to the Settlement Class

Under the Settlement Agreement, GRIPA has agreed to pay $2.15 million into a non-reversionary Settlement Fund to resolve Plaintiff's and Settlement Class Members' claims against the Defendant Released Parties. *See* SAR, § 3.1. The Settlement Fund will pay for (1) costs of Notice and Settlement Administration; (2) any Court-approved Service Award for the Settlement Class Representative; (3) any Court-approved attorneys' fees and expenses; and (4) Approved

Claims submitted by Settlement Class Members pursuant to the Settlement and the proposed Settlement Benefits Plan, as approved by the Court. *Id.* § 3.2. *See id.*, § 3.2. In addition to the monetary relief, the Settlement provides meaningful non-monetary benefits, including GRIPA's confirmation of business practice changes that it has implemented since the MOVEit Data Breach, including the implementation of additional cybersecurity policies and practices. *Id.*, § 5.

**A. The Proposed Settlement Benefits Plan.**

The Settlement provides relief to those whose PII and/or PHI was allegedly compromised as a result of GRIPA's use of MOVEit Transfer during the MOVEit Data Breach. *See* SAR § 1.39 (defining the Settlement Class as "means GRIPA patients, individual healthcare providers, and physicians in the United States whose personally identifiable information and/or protected healthcare information was impacted by the MOVEit Data Breach."); *see also id.*, § 1.21 (defining the MOVEit Data Breach as "the exploitation of the MOVEit Transfer Software vulnerability on or around May 2023 that impacted thousands of entities that used the software, including GRIPA, but, for purposes of this Agreement, only to the extent it impacted GRIPA").

The Settlement requires that the Net Settlement Fund (after deducting for notice and administration costs, the Settlement Class Representative's Service Award and attorneys' fees and expenses, as awarded and approved by the Court) be distributed via the Settlement Benefits Plan proposed by Class Counsel and the Settlement Committee. SAR § 3.2; ECF No. 1731-2. Pursuant to the Settlement Benefits Plan, Settlement Class Members were provided the opportunity to file claims for two (2) years of credit monitoring and identity theft protection, and either (1) reimbursement of ordinary losses up to $2,500.00 (including lost time of up to four (4) hours at $25.00 per hour) and reimbursement of extraordinary losses up to $10,000.00; or (2) an alternative

cash payment of $100.00 (subject to *pro rata* reduction or increase based on total claim submission). ECF No. 1731-2, § 2.

To the extent the Net Settlement Fund is not exhausted by the payment of Approved Claims, the value of the Alternative Cash Payments will be increased *pro rata*, up to $1,000.00, or until the Net Settlement Fund is exhausted. *Id.*, § 4(b). If the total value of Approved Claims exceeds the value of the Net Settlement Fund, the value of the cash payments will be decreased *pro rata* to the highest amount that will allow the Approved Claims to be paid using the Net Settlement Fund. *See id.*, § 4(a). If any funds remain one hundred and eighty (180) days after the Effective Date, any monies remaining in the Net Settlement Fund will be used to extend all Approved Claims for credit monitoring and identity theft protection services for as long as possible until the Net Settlement Fund is completely exhausted. *See id.*, § 4(c).

### B. Dismissal and Release of Claims.

Upon the Effective Date of the Settlement, the Plaintiff Released Parties shall be deemed to have released any and all liabilities, rights, claims, actions, causes of action, damages, penalties, costs, attorneys' fees, losses or demands, whether known or unknown, liquidated or unliquidated, existing or potential, suspected or unsuspected, legal, statutory, or equitable, based on contract, tort, or any other theory, that result from, arise out of, are based upon, or relate to the conduct, omissions, duties, or matters that were or reasonably could have been asserted against Defendant Released Parties. SAR §§ 1.14, 1.35, 15.1. However, the Settlement does not release claims against Progress. *See id.*, §§ 1.14–1.15. These releases were described in the proposed Long Form Notice, which was made available on the Settlement Website. *See* SAR, Ex. E; RG/2 Decl. ¶ 14(d).

## III. Results of Settlement Administration and Notice Plan.

Following the Court's issuance of the Preliminary Approval Order, the Settlement Administrator completed the Notice plan set forth in the Settlement and approved by the Court.

RG/2 Decl. ¶¶ 6, 8–17. The Notice plan was designed to reach as many Settlement Class Members as possible. The Notice included the required description of the material terms of the Settlement; the date by which Settlement Class Members could opt out of the Settlement; the date by which Settlement Class Members could object to the Settlement; the Final Approval Hearing date and time; and the Settlement Website address at which Settlement Class Members could access the Long Form Notice, Settlement Agreement, Claim Form, and other related documents and information. RG/2 Decl. ¶¶ 9, 14, & Exs. A, C.

Pursuant to the Preliminary Approval Order, Defendant provided the Settlement Administrator with the Class List containing information sufficient to provide Settlement Class Members with direct notice. RG/2 Decl. ¶ 7. The Settlement Class List contained the names and last known mailing addresses of members of the Settlement Class. *Id.* The Settlement Administrator then deduplicated the records, identifying 281,755 unique Settlement Class Members. *Id.* The Settlement Administrator engaged a third-party vendor to utilize the information provided in the Class List to conduct a reverse append process in order to obtain email addresses and further processed the Class List through the United States Postal Service National Change of Address database. *Id.* ¶¶ 7, 10. Thereafter, beginning June 5, 2026, the Settlement Administrator implemented the Notice Plan, disseminating the Notice via email to 189,914 members of the Settlement Class and via mail to 88,940 members of the Settlement Class. *Id.* ¶¶ 8–9. For the 28,369 Email Notices returned as undeliverable, the Settlement Administrator subsequently sent Notice via mail on June 12, 2026. *Id.* ¶ 8. For mail Notices returned as undeliverable, the Settlement Administrator searched for available addresses and promptly remailed the returned mail Notices if an updated address was located. *Id.* ¶ 11. A customary Long-Form Notice with more detail than the Short Form Notice was also made available on the Settlement Website. *Id.* ¶ 14(d).

Further, following Preliminary Approval, the Settlement Administrator established an informational Settlement Website, https://www.moveitsettlementgripa.com/, which included a toll free number, 866-742-4955, and email address GRIPADataSettlement@rg2claims.com, that allowed Settlement Class Members to obtain detailed information about the Settlement, file claims, and to review important documents, including the Long Form Notice, Claim Form, Settlement Agreement, Preliminary Approval, and Motion for Attorneys' Fees. *Id.* ¶¶ 14–16. The Final Approval Motion will also be posted to the website. *Id.* ¶ 14(c).

The Settlement Agreement required that RG/2 send Reminder Notice Emails to Class Members who had not yet filed a claim at least twenty-five days before the Claims Deadline. SAR § 9.3. By today, August 4, 2026, RG/2 will send Reminder Notice via email to Settlement Class Members. RG/2 Decl. ¶ 12. RG/2 will provide a supplemental declaration in advance of final approval detailing the results of the reminder notice. *Id.*

The reaction of the Settlement Class has been overwhelmingly positive. The deadline for Settlement Class Members to file claims will occur on September 3, 2026 and as of August 3, 2026, filing, 5,503 Settlement Class Members have submitted claims, resulting in a claims rate of 1.95%. *Id.* ¶ 20. This claims data is preliminary, and RG/2 will submit a supplemental declaration with updated claims information in advance of the final approval hearing. *Id.* The deadline to submit an objection or opt out of the Settlement occurred on August 4, 2026, the date of this filing. *Id.* ¶¶ 18–19. As of the Augst 3, 2026, no Settlement Class Members have objected to the Settlement, and only two (2) Settlement Class Members requested exclusion from the Settlement. *Id.* & *id.* at Ex. D. RG/2 will provide a supplemental declaration in advance of final approval with updated information. *Id.* ¶ 20.

As a result of the Notice Plan, RG/2 believes at least 93% of the identifiable Settlement Class Members received direct notice of the Settlement. *Id.* ¶ 22. The Notice here was the best practicable under the circumstances and fully complied with all requirements of due process under the United States Constitution. *Id.*

## ARGUMENT

### I. The Proposed Settlement is Fair, Reasonable, and Adequate and Should be Finally Approved.

"Settlement agreements enjoy great favor with the courts as a preferred alternative to costly, time-consuming litigation." *Fid. & Guar. Ins. Co. v. Star Equip. Corp.*, 541 F.3d 1, 5 (1st Cir. 2008) (internal citation and quotations omitted); *see also In re Lupron Mktg. & Sales Pracs. Litig.*, 228 F.R.D. 75, 88 (D. Mass. 2005) ("[T]he law favors class action settlements."). Federal Rule of Civil Procedure 23(e) provides that a proposed settlement in a class action must be approved by the court. Fed. R. Civ. P. 23(e). "The approval of a class-action settlement agreement is a 'two-step process, which first requires the court to make a preliminary determination regarding the fairness, reasonableness, and adequacy of the settlement terms.'" *Meaden v. HarborOne Bank*, No. 23-CV-10467-AK, 2023 WL 3529762, at *1 (D. Mass. May 18, 2023) (citation omitted). "The second step in the settlement approval process requires a fairness hearing, after which the court may give final approval of the proposed settlement agreement." *Id.* (citation omitted).

Under Rule 23, a court may approve a class action settlement if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). While the First Circuit has not established a fixed test for evaluating the fairness of a class action settlement, courts within this Circuit look to those set forth by the Second Circuit when reviewing a motion for final approval. *See*, *e.g.*, *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 343 (D. Mass.), *aff'd*, 809 F.3d 78 (1st Cir. 2015); *In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 472 (D.P.R. 2011); *In re Tyco Int'l, Ltd.*

*Multidistrict Litig.*, 535 F. Supp. 2d 249, 258 (D.N.H. 2007). These factors, commonly referred to as the "*Grinnell*" factors, are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Roberts v. TJX Companies, Inc.*, No. 13-CV-13142-ADB, 2016 WL 8677312, at *6 (D. Mass. Sept. 30, 2016) (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)). Importantly a court need not find all the *Grinnell* factors satisfied to grant final approval, rather the court should conduct a holistic assessment that involves "balancing the advantages and disadvantages of the proposed settlement as against the consequences of going to trial or other possible but perhaps unattainable variations on the proffered settlement." *Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund*, 582 F.3d 30, 44 (1st Cir. 2009); *see also Bussie v. Allmerica Fin. Corp*., 50 F. Supp. 2d 59, 72 (D. Mass. 1999) ("This fairness determination is not based on a single inflexible litmus test but, instead, reflects its studied review of a wide variety of factors bearing on the central question of whether the settlement is reasonable in light of the uncertainty of litigation."). A review of the relevant *Grinnell* factors supports a finding that the Settlement is fair, reasonable, and adequate, and should be finally approved.

### A. The Complexity, Expense, and Likely Duration of the Litigation.

The first *Grinnell* factor is the complexity, expense, and likely duration of the litigation. Here, the costs, complexity, and likely duration of this case strongly favor settlement. As courts

recognize, data breach class actions are inherently complex and "involve[ ] thorny issues regarding the emerging field of data breach litigation." *Holden v. Guardian Analytics, Inc.*, No. 2:23-CV-2115, 2024 WL 2845392, at *5 (D.N.J. June 5, 2024); *see also Fulton-Green v. Accolade, Inc.*, No. 18-274, 2019 WL 4677954, at *8 (E.D. Pa. Sept. 24, 2019) (recognizing data breach litigation as complex, risky, and uncertain). Because the "legal issues involved in [data breach litigation] are cutting-edge and unsettled … many resources would necessarily be spent litigating substantive law as well as other issues." *In re Target Corp. Customer Data Sec. Breach Litig.*, No. 14-md-2522 (PAM) (JJK), 2015 WL 7253765, at *2 (D. Minn. Nov. 17, 2015), *rev'd and remanded on other grounds*, 847 F.3d 608 (8th Cir. 2017), *amended*, 855 F.3d 913 (8th Cir. 2017), *and aff'd*, 892 F.3d 968 (8th Cir. 2018).

Another issue attendant to continued litigation is the expense of conducting further discovery. In complex cases, such as data breach and privacy cases, these costs can be especially extensive. *See Carter v. Vivendi Ticketing US LLC*, No. SACV2201981CJCDFMX, 2023 WL 8153712, at *5 (C.D. Cal. Oct. 30, 2023) (early resolution of data breach action favored final approval where "[s]ubstantial discovery, including document discovery and depositions, would be required" along with "[e]extensive and expensive expert analysis [that also] would be needed."); *In re Yahoo! Inc. Customer Data Security Breach Litig.*, No. 16-MD-02752, 2020 WL 4212811, at *9 (N.D. Cal. July 22, 2020) (noting that discovery is one of the significant expenses for continuing a data breach litigation). Given the highly technical nature of data breach litigation, it is very likely that discovery costs in the GRIPA action would be substantial. Such costs would have been amplified by the involvement of experts to further analyze and explain the data and their relevance to the case. *See Bezdek*, 79 F. Supp. 3d at 344 (noting that potential expenses stemming from further discovery can "decreas[e] the net benefit of any damages awarded obtained at trial").

While Plaintiff is confident in the strength of her case, by reaching a favorable settlement at this stage of the litigation the Parties will avoid significant expense and delay and instead, provide immediate and tangible relief to the Settlement Class. *See Holden*, 2024 WL 2845392, at *5 ("Although Plaintiffs believe they would ultimately prevail, litigation of this matter through trial would be complex, costly, and time-consuming. The Settlement eliminates the costs and risks associated with further litigation. The Settlement Class would also receive prompt compensation."). Accordingly, this factor strongly supports final approval of the Settlement.

**B. The Reaction of the Settlement Class to the Settlement.**

The second *Grinnell* factor is the reaction of the Settlement Class to the Settlement. It is important to note that the existence of an objection to a settlement does not by itself prevent the court from approving the agreement. Rather, this factor weighs in favor of granting final approval so long as the reaction of the class is "positive." *In re Tyco*, 535 F. Supp. 2d at 261 (noting that "only a small number" of class members had raised objections and that their objections were "without merit"); *accord Bussie*, 50 F. Supp. 2d at 77 ("[The low] number of requests for exclusion from the settlement, as well as the number and substance of objections filed ... constitutes strong evidence of fairness of proposed settlement and supports judicial approval."). In cases where a small portion of class members respond to the notice of settlement, this factor can still weigh in favor of approval where the responding class members react positively and offer little objection. *See Roberts*, 2016 WL 8677312, at *6.

Here, the positive reaction of the Settlement Class weighs in favor of final approval. The Notice advised Settlement Class Members of their ability to file a claim September 3, 2026, and, as of August 3, 2026, 5,503 Settlement Class Members have filed claims, resulting in a preliminary claims rate of 1.95 %. RG/2 Decl. ¶ 21. This claims rate compares favorably to claims rates in

other consumer data breach settlements that have been finally approved. *See*, *e.g.*, *In re Wawa, Inc. Data Sec. Litig.*, No. CV 19-6019, 2024 WL 1557366, at *17 (E.D. Pa. Apr. 9, 2024), *aff'd*, 141 F.4th 456 (3d Cir. 2025) (claims rate of 2.56%); *Carter*, 2023 WL 8153712, at *9 (C.D. Cal. Oct. 30, 2023) (claims rate of 1.6%); *In re Forefront Data Breach Litig.*, No. 21-CV-887, 2023 WL 6215366, at *4 (E.D. Wis. Mar. 22, 2023) (claims rate of 1.46%); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 321 (N.D. Cal. 2018) (claims rate of 1.8%).

Further, the Short Form Notice and Website also advised Settlement Class Members of their right to object to the Settlement and to otherwise opt out of the Settlement. RG/2 Decl. ¶¶ 9, 14, Exs. A, C. Settlement Class Members had until August 4, 2026, to object or opt out of the Settlement, and as of August 3, 2026, no Settlement Class Members have filed an objection, and only two (2) Settlement Class Members requested exclusion from the Settlement. *Id.* ¶¶ 18–19. This supports a finding the Settlement is reasonable. *See Roberts*, 2016 WL 8677312, at *6 (approving final settlement where, out of 4,018 class members, none objected to the settlement and three class members asked to be excluded from the settlement); *Hashemi v. Bosley, Inc.*, No. CV 21-946 PSG (RAOX), 2022 WL 18278431, at *6 (C.D. Cal. Nov. 21, 2022) ("Very few objections and opt-outs create a strong presumption that the Settlement is beneficial to the Class and thus warrants final approval."); *In re Cabletron Sys., Inc. Sec. Litig.*, 239 F.R.D. 30, 35–36 (D.N.H. 2006) (approving class action settlement after no objections and three opt-outs).

Given the reaction of the Settlement Class, this factor weighs in favor of final approval of the Settlement.

### C. The Stage of the Proceedings and Amount of Discovery.

The third *Grinnell* factor considers the stage of the proceedings and amount of discovery. In evaluating the stage of the case and the discovery taken, courts do not require that discovery be

complete, rather the relevant inquiry is whether "sufficient discovery" was conducted "to make an intelligent judgment about settlement." *Hochstadt v. Bos. Sci. Corp.*, 708 F. Supp. 2d 95, 107 (D. Mass. 2010). Put differently, while the parties need not engage in extensive discovery, they must have conducted "a sufficient factual investigation . . . to afford the Court the opportunity to 'intelligently make … an appraisal' of the Settlement.'" *Diaz v. FCI Lender Servs., Inc.*, No. 17-CV-8686 (AJN), 2020 WL 4570460, at *4 (S.D.N.Y. Aug. 7, 2020) (citation omitted).

Here, the Parties reached the proposed Settlement after engaging in a sufficiently adequate amount of informal discovery via the mediation process. *See* Declaration of Gary F. Lynch ("Lynch Decl.") ¶ 17, filed concurrently herewith. The information uncovered and reviewed by Co-Lead Counsel and Settlement Committee provided them with the information needed to objectively evaluate the strengths and weaknesses of Plaintiff's and Settlement Class Members' claims. *Id.* ¶¶ 17, 28. Additionally, GRIPA's MOVEit Data Breach is part of the larger MOVEit incident that spawned hundreds of cases consolidated in the MDL. Co-Lead Counsel, who the Court appointed to manage the related actions in the MDL, has been informed by their investigations and litigation of those centralized actions. *Id.* ¶ 18. Co-Lead Counsel's and the Settlement Committee's experience representing plaintiffs and other data breach victims in the MDL provided further knowledge and background to guide their assessment of the reasonableness of the Settlement. *See id.* ¶¶ 3–4, 17–18, 28.

The information received from GRIPA and obtained in overseeing plaintiffs in the MDL, along with Settlement Committee's experience litigating data breach actions, provided counsel with sufficient information to evaluate the strengths and weaknesses of the claims and defenses in this case, and to assess the reasonableness of the Settlement. *Id.* ¶¶ 17–18. Based on the information available to both parties, their respective experience in data breach litigation generally,

and their experience in the MDL specifically, Lead Counsel and the Settlement Committee believe the Settlement to be fair, reasonable, and adequate. *Id.* ¶ 29. Because the information shared via the mediation process informed the Parties about their respective litigation positions, this factor weighs in favor of final approval. *See*, *e.g.*, *Holden*, 2024 WL 2845392, at *5 (in a data breach settlement, recognizing that the parties adequately appreciated the merits of the case through their factual investigation and the mediation process even though the case settled prior to the parties engaging in formal discovery).

### D. The Risks of Establishing Liability and Damages.

The fourth and fifth *Grinnell* factors evaluate the risks of establishing liability and damages. In assessing these factors, a court "need not decide the merits of the case, resolve unsettled legal questions, or attempt to predict the outcome." *In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 313 (S.D.N.Y. 2020). Rather, the Court should balance the benefits afforded to the Class, including the immediacy and certainty of recovery, against the continuing risks of litigation. *See Grinnell*, 495 F.2d at 463.

Here, while Plaintiff is confident that she has a strong case against Defendant, winning a judgment would require surmounting several legal hurdles, with a recovery at the end of the day being far from certain. *See In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2807, 2019 WL 3773737, at *7 (N.D. Ohio Aug. 12, 2019) ("Data breach litigation is complex and risky. This unsettled area of law often presents novel questions for courts"). This is especially so where, as here, Defendant categorically denies all allegations of wrongdoing and would have vigorously litigated the case had a settlement not been reached. Specifically, while the Court issued favorable rulings on the omnibus Rule 12(b)(1) motions (MDL Order No. 19 as amended by MDL Order No. 32; MDL Order No. 20) and later on the Rule 12(b)(6) motions filed by the Bellwether

Defendants (MDL Order Nos. 22 & 23), had the Parties proceeded with litigation, GRIPA would have likely argued that the Court's 12(b)(6) orders are not applicable or instructive to the claims asserted against GRIPA or GRIPA likely would have raised additional arguments that the Court did not address during briefing on the Bellwether Defendants' Rule 12(b)(6) motions. In addition, there is the possibility that the Court would not certify a nationwide class. *See*, *e.g.*, *In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389 (D. Mass. 2007) (denying class certification because necessity of individualized inquiries regarding causation, comparative negligence, and damages precluded a finding of predominance). And even if Plaintiff were successful in having a class certified, she risked a jury finding against herself and the Settlement Class on liability and/or damages. *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2800-TWT, 2020 WL 256132, at *10 (N.D. Ga. Mar. 17, 2020), *aff'd in part, rev'd in part and remanded*, 999 F.3d 1247 (11th Cir. 2021) ("The likelihood of success at trial is uncertain at best."); *see also In re Sonic Corp.*, 2019 WL 3773737, at *7 ("juries are always unpredictable").

In addition, had the litigation continued, proving damages and liability would have likely required significant expert testimony and analysis. *See Carter*, 2023 WL 8153712, at *5 (recognizing at final approval that had data breach case proceeded, "[e]xtensive and expensive expert analysis would be needed."). Although Plaintiff believes that expert testimony would provide evidence sufficient to establish the measure of damages in this case, it is possible that, in the unavoidable "battle of experts," a jury might disagree with Plaintiff's expert, find Defendant's expert more persuasive, or agree with the Plaintiff's expert but award a reduced amount of damages to the Settlement Class. *In re Tyco*, 535 F. Supp. 2d at 260–61 ("[E]ven if the jury agreed to impose liability, the trial would likely involve a confusing 'battle of the experts' over damages. If, faced with conflicting expert testimony, the jury chose to embrace the most conservative estimate of

damages, then the ultimate award might turn out to be less than the proposed settlement."). As such, Plaintiff faced the risk of a non-monetary recovery for members of the Settlement Class even if she established Defendant's liability.

In the face of these risks, and in Class Counsel's experienced and realistic opinion, the Settlement provides immediate and substantial benefits to the Settlement Class. Lynch Decl. ¶¶ 21–26. As such, these factors favor final approval.

**E. The Risks of Maintaining the Class Action Through Trial.**

The sixth *Grinnell* factor considers the risks of maintaining the class action through trial. This factor weighs in favor of settlement where "it is likely that defendants would oppose class certification if the case were to be litigated." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 694 (S.D.N.Y. 2019). Here, had litigation proceeded, Defendant would likely have opposed class certification, arguing that individual issues predominate over common issues or that the class action device is not a superior form of adjudication. *See In re Marriott Int'l, Inc. Customer Data Sec. Breach Litig.*, 341 F.R.D. 128, 162 (D. Md. 2022).[5] Further, even assuming that Plaintiff was successful in certifying a class, there is a risk that Defendant would ask the Court to reconsider or amend the certification decision, or appeal it, and the First Circuit would have discretion to consider interlocutory review under Rule 23(f). *See Roberts*, 2016 WL 8677312, at *7. While Plaintiff is confident in the strength of her case, and that she would overcome Defendant's challenges to class certification, the opportunities where certification could fail nevertheless creates a risk of delay and a risk of Plaintiff failing to prevail, and a risk that the Settlement Class

[5] *Vacated and remanded sub nom. In re Marriott Int'l, Inc.*, 78 F.4th 677 (4th Cir. 2023), and *reinstated by In re Marriott Int'l Customer Data Sec. Breach Litig.*, 345 F.R.D. 137 (D. Md. 2023).

would receive nothing. *See id.* As a result, this factor weighs in favor of final approval of the Settlement.

### F. The Ability of the Defendant to Withstand a Greater Judgment.

The seventh *Grinnell* factor looks to the defendant's ability to withstand a greater judgment. Courts have found this factor is not dispositive and need not affect the conclusion that the settlement is within the range of reasonableness. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001); *see also In re Sturm, Ruger, & Co., Inc. Sec. Litig.*, No. 3:09CV1293 VLB, 2012 WL 3589610, at *7 (D. Conn. Aug. 20, 2012) (a defendant is "not required to empty its coffers before a settlement can be found adequate"). This factor is relevant, however, where "judgment may risk bankruptcy or severe economic hardship." *Jermyn v. Best Buy Stores, L.P.*, No. 08 CIV. 214 CM, 2012 WL 2505644, at *7 (S.D.N.Y. June 27, 2012).

Although Defendant may have the ability to withstand a greater judgment, the outstanding result—an $2.15 million common fund settlement—compared to the risks and expenses attendant to conducing this litigation and the immediacy of the benefit to Settlement Class Members, weighs in favor of settlement. Accordingly, the Court should find the factor weighs in favor of approval, or, alternatively, "assign 'relatively little weight' to this factor." *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 620–21 (S.D.N.Y. 2012).

### G. The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and the Attendant Risks of Litigation.

The last two *Grinnell* factors are the range of reasonableness of the settlement fund in light of the best possible recovery and the attendant risks of litigation. These two factors are typically analyzed together. *See, e.g.*, *In re Sturm*, 2012 WL 3589610, at *7. The issue is not whether the settlement represents the best conceivable recovery, but how the settlement relates to the strengths and weaknesses of the case. *Grinnell*, 495 F.2d at 462. As such, courts consider and weigh the

nature of the claims, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable. *Id.* Put differently, the focus is on whether the settlement "represents a reasonable one in light of the many uncertainties the class faces." *Hall v. ProSource Techs., LLC*, No. 14-CV-2502 (SIL), 2016 WL 1555128, at *8 (E.D.N.Y. Apr. 11, 2016).

As discussed above, Plaintiff faced numerous uncertainties, including certifying a class and maintaining class certification, establishing liability and damages, and ultimately receiving a recovery. On the other hand, the $2.15 million Settlement for the approximately 280,000 Settlement Class Members provides substantial and immediate relief to compensate them for past injuries and the continued risk of harm. Such relief is similar to if not better than other data breach settlements that have received final approval. *See*, *e.g.*, *Gravley v. Fresenius Vascular Care, Inc.*, No. CV 24-1148, 2025 WL 2099219, at *1 (E.D. Pa. July 24, 2025) (granting final approval to data breach settlement that provided for reimbursement of out-of-pocket losses or an alternative cash payment); *In re Loancare Data Security Breach Litig.*, No. 3:23-CV-01508-CRK-MCR, 2025 WL 2604518, at *2 (M.D. Fla. Sept. 9, 2025) (similar); *In re Cap. One Consumer Data Sec. Breach Litig.*, No. 119MD2915AJTJFA, 2022 WL 18107626, at *12 (E.D. Va. Sept. 13, 2022) (approving proposed allocation plan that allowed class members to submit claims for out-of-pocket losses, lost time, and credit monitoring services); *In re MOVEit Customer Data Sec. Breach Litig.*, No. 1:23-md-03083 (D. Mass.) (ECF No. 1432) (similar); (ECF No. 1485) (similar); (ECF No. 1610) (similar); (ECF No. 1744) (similar); (ECF No. 1969) (similar). Given the risks of continued litigation compared to the Settlement's substantial and immediate benefits, these factors also favor final approval, and, thus, the Court should find the Settlement falls within the range of reasonableness.

## II. The Court Should Finally Certify the Settlement Class.

In finally approving a class action settlement, the Court must also determine whether to certify the class for settlement purposes. *In re Colgate-Palmolive Softsoap Antibacterial Hand Soap Mktg. & Sales Pracs. Litig.*, No. 12-MD-2320-PB, 2015 WL 7282543, at *5 (D.N.H. Nov. 16, 2015). Courts have repeatedly found data breach classes meet the class certification requirements. *See*, *e.g.*, *Attias v. CareFirst, Inc.*, 346 F.R.D. 1 (D.D.C. 2024); *Savidge v. Pharm-Save, Inc.*, No. 3:27-cv-186, 2024 WL 1366832 (W.D. Ky. Mar. 29, 2024); *In re Marriott*, 341 F.R.D. at 173; *In re Sonic Corp. Customer Data Breach Litig.*, No. 1:17-MD-02807-JSG, 2020 WL 6701992 (N.D. Ohio Nov. 13, 2020); *In re Target Corp. Customer Data Sec. Breach Litig.*, 309 F.R.D. 482, 490 (D. Minn. 2015). Indeed, data breach actions conform to the "policy at the very core of the class action mechanism . . . to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997).

In considering whether to certify a Settlement Class, courts look to Rule 23 of the Federal Rules of Civil Procedure. *See id.* at 620-21. Rule 23(a) creates four threshold requirements applicable to all class actions: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy. Fed. R. Civ. P. 23(a)(1)-(4); *see also Amchem*, 521 U.S. at 613. Additionally, the proposed class must meet one of the requirements of Rule 23(b). *Id.* Where, as here, a Rule 23(b)(3) damages class is proposed, plaintiffs must show "the questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These requirements are generally referred to as "predominance" and "superiority." Here, as described below, the Rule 23(a) and (b) requirements are satisfied, and the Court should certify the Settlement Class.

**A. The Settlement Class Meets the Requirements of Rule 23(a).**

Rule 23(a) provides four prerequisites that any proposed class must meet. These prerequisites are: (1) the class is so numerous that joinder of all members is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); and (4) the representative parties will fairly and adequately protect the interests of the class ("adequacy"). Fed. R. Civ. P. 23(a)(1)–(4). The proposed Settlement Class meets all four Rule 23(a) requirements.

**1. Numerosity.**

Under Rule 23(a)(1), the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "The threshold for establishing numerosity is low, and '[c]lasses of 40 or more have been found to be sufficiently numerous.'" *Meaden*, 2023 WL 3529762, at *2 (citation omitted). Here, the Settlement Class is so numerous that joinder is impracticable. The Settlement Class consists of approximately 280,000 individuals, far surpassing the threshold number of 40. Moreover, all Settlement Class Members have already been identified by GRIPA during its investigation of the MOVEit Data Breach and the issuance of notice to affected individuals. *See Engel v. Scully & Scully, Inc.*, 279 F.R.D. 117, 127–28 (S.D.N.Y. 2011) (holding defendants' business records may be used to ascertain class members). Numerosity is met here.

**2. Commonality.**

Under Rule 23(a)(2), the settlement class must share common questions of law or fact. The commonality requirement is not demanding. Rather, it is a "low bar" and may be satisfied by a single common question of fact or law. *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,

522 F.3d 6, 19 (1st Cir. 2008). Commonality is met where the claims "depend upon a common contention" that is "of such a nature that it is capable of class-wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 347 (2011).

Here, the Settlement Class shares numerous common questions of law and fact, and the answers to those common questions will have a class-wide effect. To start, Plaintiff's and Settlement Class Members' PII/PHI were transferred via MOVEit Transfer in the regular course of GRIPA's business. As a result of the MOVEit Data Breach and GRIPA's use of the MOVEit Transfer software, each Settlement Class Member's PII/PHI was compromised by cybercriminals. Consequently, Plaintiff and Settlement Class Members all suffered similar injuries, including, *inter alia*: the risk of harm from the misuse of their data; the loss of privacy from cybercriminals compromising their PII/PHI; and out-of-pocket costs and lost time spent investigating the MOVEit Data Breach and mitigating the risk of future misuse of their PII/PHI.

While only one common question is sufficient to satisfy commonality, here, Plaintiff's and Settlement Class Members' claims present numerous additional common issues, including but are not limited to the following:

- Whether GRIPA owed Plaintiff and the Settlement Class a duty to reasonably secure their PII/PHI;
- Whether GRIPA breached its duty by failing to implement and maintain adequate data security and failing to protect data transferred via MOVEit Transfer;
- Whether GRIPA's breach of duty caused harm to Plaintiff and the Settlement Class, including the compromise of their PII/PHI;
- Whether Plaintiff and the Settlement Class suffered harm due to the compromise and potential misuse of their PII/PHI; and
- Whether Plaintiff's and Settlement Class Members' damages are reasonably quantifiable.

The existence of these common legal questions and the overwhelmingly similar factual issues presented by Settlement Class Members' claims satisfy commonality here.

**3. Typicality.**

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "To establish typicality, the plaintiffs need only demonstrate that 'the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory.'" *In re M3 Power Razor System Marketing & Sales Practices Litig.*, 270 F.R.D. 45, 54 (D. Mass. 2010). "The claims of the class representative and the class overall must share essential characteristics, but they need not be precisely identical." *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 338 (D. Mass.), *aff'd*, 809 F.3d 78 (1st Cir. 2015).

Here, Plaintiff's claims are typical of those of Settlement Class Members because they were all impacted by the same MOVEit Data Breach—a data incident in which their PII/PHI was accessed by an unauthorized third party—and involve the same overarching legal theories, including theories that GRIPA failed to safeguard their PII/PHI. *See Abubaker v. Dominion Dental USA, Inc.*, No. 119CV01050LMBMSN, 2021 WL 6750844, at *3 (E.D. Va. Nov. 19, 2021) (typicality satisfied where plaintiffs and settlement class members were subject to a data breach and were alleged to have suffered the same type of injuries). Plaintiff's legal theories do not conflict with those of absentee Settlement Class Members, and Plaintiff has and will continue to represent the interests of all Settlement Class Members fairly, because such interests parallel their own. As such, Rule 23(a)(3)'s typicality requirement is satisfied.

**4. Adequacy.**

Rule 23(a)(4) requires that the proposed class representative "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The plaintiffs 'must show first that the interests of the representative party will not conflict with the interests of any of the class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation.'" *M3 Power*, 270 F.R.D. at 55.

Here, Plaintiff satisfies both requirements. First, Plaintiff's interests align with, and are not adverse or antagonistic to, those of Settlement Class Members. Plaintiff seeks to hold GRIPA accountable for, among other things, their failure to safeguard Plaintiff's and Settlement Class Members' PII/PHI. As such, Plaintiff seeks to hold GRIPA accountable for the same alleged wrongdoing that caused the Settlement Class to suffer similar harm—the theft and risk of misuse of their PII/PHI. Plaintiff's interests therefore fully align with those of the Settlement Class. *See In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 309–11 (N.D. Cal. 2018) (finding the adequacy requirement satisfied where all class members had their personal information compromised in the data breach and generally sought the same relief).

Second, Co-Lead Counsel are qualified, experienced, and competent in complex litigation and have an established, successful track record in class litigation – including cases analogous to this one. *See* Lynch Decl., ¶¶ 3–4. Co-Lead Counsel and Plaintiff have diligently advanced the interests of the Settlement Class, including by investigating the MOVEit Data Breach and resolving the cases against GRIPA through Settlement. Accordingly, Rule 23(a)(4)'s adequacy requirement is satisfied.

**B. The Settlement Class Meets the Requirements of Rule 23(b).**

Under Rule 23(b)(3), a class action should be certified when the court finds that common questions of law or fact predominate over individual issues and a class action would be superior to other methods of resolving the controversy. The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 594, 623. "The superiority inquiry [ ] ensures that litigation by class action will 'achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. CV 14-MD-02503, 2017 WL 4621777, at *21 (D. Mass. Oct. 16, 2017) (citation omitted). Here, the Settlement Class readily meets both requirements.

**1. Common Issues Predominate Over Individual Issues.**

A Rule 23(b)(3) settlement class must show that common questions "predominate over any questions affecting only individual [class] members." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013). Predominance "does not require that each element of the claims [be] susceptible to class-wide proof" but only that "the individualized questions … [do] not 'overwhelm' the common ones." *In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*, 325 F.R.D. 529, 537 (D. Mass. 2017) (citation omitted). "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016).

Here, common issues predominate over individual issues because each Settlement Class Member would rely on common factual evidence to establish GRIPA's liability. Each Settlement Class Member's claim centers on GRIPA's allegedly inadequate data security and GRIPA's use of MOVEit Transfer, which, Plaintiff alleges, Defendant knew or should have known could result in a data breach and harm to Plaintiff and the Settlement Class. Despite that knowledge, Plaintiff contends, GRIPA's knowingly used inadequate data security. Proof of those facts would establish GRIPA's duty and breach of duty on a class-wide basis, and proof of those facts depends exclusively on GRIPA's knowledge and actions. Thus, those elements of each Settlement Class Member's claim are resolvable in a "single stroke" and do not depend on any individualized issue. *Dukes*, 564 U.S. at 347; *Savidge*, 727 F. Supp. 3d at 707 (finding that whether defendant owed a duty, breached a duty, and whether the breach of said duty caused injuries were predominating questions).

Additionally, common issues concerning causation and damages predominate. Whether GRIPA's alleged misconduct, in part, caused the MOVEit Data Breach and the resulting theft of Plaintiff's and Settlement Class Members' data will depend on common evidence comparing Progress's and GRIPA's knowledge and acts and their contribution to the breach. Further, as other courts have recognized, Plaintiff can establish damages on a class-wide basis using models to measure the diminished value of the stolen data and the lost time and effort incurred responding to the breach. *See*, *e.g.*, *Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883, 889–90 (11th Cir. 2023) (approving plaintiffs' method for measuring class damages due to a data breach). Although each individual Settlement Class Member may have some individualized damages, those individual damages generally do not defeat class certification. *See Corra v. ACTS Ret. Servs., Inc.*, No. CV 22-2917, 2024 WL 22075, at *5 (E.D. Pa. Jan. 2, 2024) ("Although there may be slight differences

among class members regarding degree of damages or the exact type of injury suffered (e.g., breach of sensitive financial information or breach of health data), none of these differences would preclude resolution on a class-wide basis."). For these reasons, predominance is satisfied.

**2. A Class Action is a Superior Device for Adjudicating the GRIPA Action.**

The superiority criterion requires that class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In evaluating superiority, courts consider (1) the interests of class members in individually litigating separate actions, (2) the extent and nature of existing litigation, (3) the desirability of concentrating the litigation of the claims in one forum, and (4) the difficulty of managing a class action. *See id.* "The superiority inquiry thus ensures that litigation by class action will 'achieve economies of time, effort, and expense, and promote … uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *In re Solodyn*, 2017 WL 4621777, at *21 (citation omitted). Where a "large number of potential plaintiffs" share common claims, "certifying the class will allow a more efficient adjudication of the controversy than individual adjudications would." *Roberts v. Source for Pub. Data*, No. 08-CV-04167-NKL, 2009 WL 3837502, at *7 (W.D. Mo. Nov. 17, 2009).

Here, class resolution is superior to other available means for the fair and efficient adjudication of the claims asserted against GRIPA. First, the potential damages suffered by the approximately 280,000 Settlement Class Members are relatively low dollar amounts and would be uneconomical to pursue on an individual basis given the burden and expense of prosecuting individual claims. *See In re Anthem*, 327 F.R.D. at 315 (superiority satisfied in data breach settlement where the "the amount at stake for individual Settlement Class Members is too small to bear the risks and costs of litigating a separate action."). Second, there is little doubt that resolving

all Settlement Class Members' claims jointly, particularly through a class-wide settlement negotiated on their behalf by counsel well versed in class action litigation, is superior to a series of individual lawsuits and promotes judicial economy. *See In re Cap. One*, 2022 WL 18107626, at *5 (recognizing that litigating the claims of millions of individuals impacted by a data breach would be inefficient).

For these reasons, the Settlement Class satisfies the requirements of Rules 23(a) and (b)(3), and Plaintiff respectfully requests that the Court finally certify the Settlement Class for purposes of Settlement.

## III. The Notice Program Satisfied Rule 23 and Due Process by Providing Settlement Class Members with Adequate Notice of the Settlement.

Rule 23(e)(1)(B) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the [settlement]." Fed. R. Civ. P. 23(e)(1)(B). In addition, "[f]or any class certified under Rule 23(b)(3) … the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Class Notice plan satisfied these requirements.

Here, following the Court's approval of the Notice plan, the Settlement Administrator directed notice to the Settlement Class via direct mail and email notice. RG/2 Decl. ¶¶ 8–9. To ensure the Notice reached as many Settlement Class Members as possible, the Settlement Administrator performed reasonable email and physical address checks for the Short Form Notice. *Id.* ¶¶ 7, 11. Finally, by or before August 4, 2026, the Settlement Administrator will send Reminder Notices via email to Settlement Class Members for whom a valid email address was available and the initial Email Notice was not returned as undeliverable, and who had not yet filed a Claim Form or requested exclusion from the Settlement. *Id.* ¶ 12. Courts have recognized that direct email and

mail satisfy due process. *See Wright v. S. New Hampshire Univ.*, 565 F. Supp. 3d 193, 207 (D.N.H. 2021) (notice to class via direct email and mail notice "constitute[d] a reasonable manner of providing notice to those parties who would be bound by the terms of the proposed settlement agreement"); *Meaden*, 2023 WL 3529762, at *4 (same).

Further, the Notice included important information about the Settlement, including how to opt out or object, where to find more information about the Settlement, and how to contact Class Counsel. RG/2 Decl. ¶¶ 9, 14; Exs. A, C. Additionally, the Notice was designed to be "noticed," reviewed, and—by presenting the information in plain language—understood by Settlement Class Members. The design of the Notice followed principles embodied in the Federal Judicial Center's illustrative "model" notices posted at www.fjc.gov and contained plain-language summaries of key information about Settlement Class Members' rights and options. As required by Rule 23(e), the Notice generally described the Settlement in sufficient detail to alert Settlement Class Members to come forward to be heard, and contained all of the critical information required to apprise Settlement Class Members of their rights. *See* RG/2 Decl. ¶¶ 9, 14; Exs. A, C. RG/2 believes the notice plan reached over 93% of Settlement Class Members. *Id.* at ¶ 22. Thus, the notice plan was adequately designed to be seen by the Settlement Class Members, and provided sufficient detail to allow Settlement Class Members with adverse viewpoints to come forward and be heard. *See Hill v. State Street Corp.*, No. 09-cv-12146, 2015 WL 127728 at *14 (D. Mass. Jan. 8, 2015) (notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections").

The Federal Judicial Center states that a notice plan that reaches 70% of class members is one that reaches a "high percentage" and is within the "norm." Barbara J. Rothstein & Thomas E. Willging, Federal Judicial Center, "Managing Class Action Litigation: A Pocket Guide or Judges,"

at 27 (3d ed. 2010).[6] The reach of 93% for this Notice plan far surpasses that threshold. The Notice to the Settlement Class here was the best notice that is practicable and is equivalent or superior to notice campaigns approved in similar class action settlements and in this MDL.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter the proposed Final Approval Order and Final Judgement, filed herewith: (i) granting Final Approval of the Settlement; (ii) finally certifying the Settlement Class for purposes of settlement; and (iii) providing other such relief required to effectuate the Settlement.

Dated: August 4, 2026

Respectfully submitted,

By: *_/s/ Kristen A. Johnson_*
Kristen A. Johnson (BBO# 667261)
HAGENS BERMAN SOBOL SHAPIRO LLP
1 Faneuil Hall Square, 5th Fl.
Boston, MA 02109
Tel: (617) 482-3700
Fax: (617) 482-3003
kristenj@hbsslaw.com

*Liaison & Coordinating Counsel*

By: *_/s/ E. Michelle Drake_*
E. Michelle Drake
BERGER MONTAGUE, PC
1229 Tyler St., NE, Ste. 205
Minneapolis, MN 55413
Tel: (612) 594-5933
Fax: (612) 584-4470
emdrake@bergermontague.com

[6] This document is available at https://www.fjc.gov/sites/default/files/2012/ClassGd3.pdf.

By: */s/ Gary F. Lynch*
Gary F. Lynch
LYNCH CARPENTER, LLP
1133 Penn Ave., 5th Fl.
Pittsburgh, PA 15222
Tel: (412) 322-9243
Fax: (412) 231-0246
Gary@lcllp.com

By: */s/ Douglas J. McNamara*
Douglas J. McNamara
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW, 5th Fl.
Washington, DC 20005
Tel: (202) 408-4600
dmcnamara@cohenmilstein.com

By: */s/ Karen H. Riebel*
Karen H. Riebel
LOCKRIDGE GRINDAL NAUEN PLLP
100 Washington Ave. S., Ste. 2200
Minneapolis, MN 55401
Tel: (612) 339-6900
Fax: (612) 612-339-0981
khriebel@locklaw.com

By: */s/ Charles E. Schaffer*
Charles E. Schaffer
LEVIN SEDRAN & BERMAN LLP
510 Walnut Street, Ste. 500
Philadelphia, PA 19106
Tel: (215) 592-1500
Fax: (215) 592-4663
cshaffer@lfsblaw.com

*Lead Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that, on this date, the foregoing document was filed electronically via the Court's CM/ECF system, which will send notice of the filing to all counsel of record.

Dated: August 4, 2026

*/s/ Kristen A. Johnson*
Kristen A. Johnson